## HUNTER v. HUNTER. (No. 89.)

(Court of Civil Appeals of Texas. Beaumont.
April 13, 1916. Rehearing Denied
July 3, 1916.)

1. TRIAL ☞314(1)—REMARKS OF COURT—CO-ERCION OF JURY.

When the jury had been out two days and asked to be discharged, it was highly improper for the judge to reply that the trial had been costly and that he would give them eight more days to reach a verdict, where, in view of terrific storm conditions and lack of communication with their homes, the jury might have been and apparently were coerced into rendering a compromise verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 472, 473, 747; Dec. Dig. ☞314(1).]

2. NEW TRIAL ☞26—PRESERVATION OF EX-CEPTIONS — REMARKS OF COURT — TIME TO OBJECT.

Where appellant's counsel was present and made no objection to erroneous remarks of the court in retiring the jury after its request to be discharged, his objection to the error came too late in motion for new trial made a week later.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 37–39; Dec. Dig. ☞26.]

3. DIVORCE ☞149 — CONFLICT IN VERDICT — CUSTODY OF CHILDREN.

Error cannot be predicated on the alleged conflict in the verdict which found the mother entitled to a divorce and custody of two girls, but not a fit and proper person to have custody of a boy; no actual conflict necessarily following from such findings.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 496–498; Dec. Dig. ☞149.]

4. APPEAL AND ERROR ☞690(4) — RECORD — ADMISSION OF TESTIMONY — SCOPE OF RE-VIEW—SUFFICIENCY.

In the absence from the record of any statement of facts, error alleged in admission of testimony will not be reviewed, there being no way to determine whether the admission was error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2899; Dec. Dig. ☞690(4).]

5. DIVORCE ☞302—DECREE—FUNDAMENTAL ERROR—INCONSISTENT FINDINGS.

It was not fundamental error for the judgment to award divorce to the wife with custody of two girls and deny custody of a boy to her, on the ground that it was not in accordance with the verdict, which, while not in conflict in itself, required such disposition.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 791, 792; Dec. Dig. ☞302.]

Appeal from District Court, Tyler County; A. E. Davis, Judge.

Suit by P. I. Hunter against D. L. Hunter, wherein defendant filed a cross-action and sued out injunction. Judgment awarding divorce and custody of two children to defendant, and custody of one child to plaintiff, and defendant appeals. Affirmed.

Smith & Lanier, of Jasper, and Thomas & Wheat, of Woodville, for appellant. Mooney & Shivers, of Woodville, for appellee.

MIDDLEBROOK, J. This is a suit filed in the district court of Tyler county, Tex., July 10, 1915, for divorce, on the ground of three years' permanent abandonment. Defendant, D. L. Hunter, filed her answer and cross-action on July 29, 1915, denying plaintiff's right to recover a divorce of her, and in cross-petition pleaded for divorce in her own behalf, basing such plea upon the ground of cruel treatment. The trial of the case began on the 16th day of August, and was finally finished on the 21st day of August, the jury rendering verdict in favor of the defendant on her cross-action.

Upon filing of petition by the plaintiff, defendant sued out an injunction, asking that the plaintiff be restrained from interfering with her three children, two of whom were girls and one, a boy. The defendant alleged in her petition for injunction that after filing of suit by the plaintiff, but before citation was served on her, the plaintiff wrongfully took charge of John R. Hunter, the boy, who was only five years old, and that she feared he would remove him beyond her reach, and out of the state, into the state of Louisiana. The injunction was granted on this petition, and an order entered commanding the delivery of the boy, John R. Hunter, back to the mother, D. L. Hunter. Later this order was modified by the district judge, on petition of P. I. Hunter and upon a representation to the court by him that he would not take the child out of the state, and that he would have the child present at the trial of the case. The case was tried before a jury and was submitted to the jury upon special issues, after a general instruction to the jury, as to grounds of divorce.

The five special issues submitted to the jury by the court, as presented by the record, are as follows:

(1) Is the plaintiff, under the facts and pleadings, entitled to a divorce?

(2) Is the defendant, Mrs. D. L. Hunter, under the facts and circumstances, entitled to a divorce?

(3) Is the plaintiff a fit and proper person to have the care and custody of the boy, John R. Hunter?

(4) Is Mrs. D. L. Hunter a fit and proper person to have the care and custody of the three children?

(5) Would the interests of the children be best subserved by placing their care and custody in the hands of Mrs. D. L. Hunter, or by placing the care and custody of the two girls in the hands of Mrs. D. L. Hunter, and the care and custody of the boy, John R. Hunter, in the hands of P. I. Hunter?

The jury answered the first question, "No." It answered the second question, "Yes." It answered the third question, "Yes." The instruction given to the jury, as to their answer to the fifth question, was as follows:

"If you find the fact to be that the best interests of the three children will be best subserved by placing their care and custody in the hands of Mrs. D. L. Hunter, then you will answer this question with the words: 'Mrs. D. L. Hunter'; but if you find the fact to be that

the best interests of the children will be subserved by placing the care and custody of the two girls in the hands of Mrs. D. L. Hunter, and the care and custody of the boy, John R. Hunter, in the hands of Mr. P. I. Hunter, then you will answer this question as follows: 'Give the girls to Mrs. D. L. Hunter, and give the boy to Mr. P. I. Hunter.' "

The jury answered that question: "Give the girls to Mrs. D. L. Hunter, and give the boy to Mr. P. I. Hunter." Judgment was entered by the trial court, giving the custody of the two girls in the care of Mrs. D. L. Hunter, and the custody of the boy in the care of P. I. Hunter, and also a decree of divorcement, in the following language:

"It is therefore ordered, adjudged, and decreed by the court that the bonds of matrimony heretofore existing between the plaintiff, P. I. Hunter, and D. L. Hunter be, and are hereby, in all things dissolved, and they are now divorced."

P. I. Hunter, the plaintiff, in supplemental petition asked for the care and custody of the boy, and represented in his petition, which was sworn to, that he was better able to care for, support, and educate the boy than was Mrs. D. L. Hunter and that he desired to give the boy a collegiate education, as he had one of his sons by another marriage.

There is no statement of facts in the record in this case, hence the only thing before us for consideration is whether or not the record presents fundamental error. The record, as presented, shows that the trial of this case was in progress during the notorious storm, which struck southeast and east Texas on or about the 16th of August. After the jury had deliberated upon a verdict for 18 hours, it returned into open court in body, and the foreman of the jury delivered to the trial judge the following written request:

"Judge A. E. Davis: We are hopelessly divided in this cause, and there are no hopes of reaching a verdict, and we would like to be excused.    [Signed]  L. G. Miller, Foreman."

Upon receiving this message from the jury, the trial judge addressed the jury as follows: "Mr. Miller, did you write this note?" Mr. Miller answered, "Yes." The trial court then asked the jurors if they had asked the foreman to write the note, to which they answered they had, and the trial judge then addressed the jury, substantially, as follows:

"Gentlemen, it has taken about three days to try this case, and at considerable cost, and I will just give you until midnight of next Saturday night to reach a verdict in this case."

He retired the jury to their room, with this instruction, and in about six hours they again returned into open court, with the verdict heretofore set out.

Appellant's first assignment of error is lengthy, but it complains of the action of the trial court in the remarks he made to the jury, when the jury came before him, after they had been deliberating about 18 hours, and announced that they were hopelessly divided and asked to be discharged. The assignment of error, the motion for new trial, and the bill of exceptions show that the case was on trial during the notorious August, 1915, storm, and the contention of the appellant in her motion for new trial and assignment of error, is that the trial court, in instructing the jury that he would keep them in consideration of the case until Saturday night August 28th, was a coercion by the court, upon the jury to extort a verdict from them, and that it did have the effect of extorting a verdict from them, and that such extortion is reflected in that part of the jury's verdict, wherein they say that Mrs. D. L. Hunter is not a proper person to have the care and custody of the boy, and yet give her the care and custody of the two girls.

[1] We think, unquestionably, that the language of the trial court to the jury, in which he threatened to keep them together for eight more days, after they had deliberated upon a verdict for a part of two days, was very improper. We all know that courts are very expensive, and judges of courts are to be commended for their zeal and industry directed to the end that the most may be done at the least cost; but under no circumstances should a trial judge let his zeal for an economical administration of justice swerve him from that high authority with which the law clothes him to see that justice is administered, at whatever the cost may be. It is very likely, practically certain, that the instruction delivered to the jury by the trial judge, at the time and under the surroundings under which the jury was then deliberating, had the effect to cause them to return a compromise verdict. The motion for new trial, and the bill of exceptions duly approved by the trial court, show that this occurred during the great hurricane before mentioned. They show also that telephone communication and telegraph communication were out of commission, and that the jurors were away from home; and it is not necessary to speculate upon the condition of the minds of those jurors at that time, and especially when the court told them he would give them until the next Saturday night at midnight, eight days later, to find a verdict; and if timely objection had been made to this language, and proper bill of exception taken, this assignment of error would present a very serious issue in this case, and would, perhaps, cause a reversal of the case. Wootan v. Partridge, 39 Tex. Civ. App. 346, 87 S. W. 356; G., C. & S. F. Ry. Co. v. Johnson, 99 Tex. 341, 90 S. W. 164; Pecos & N. T. Ry. Co. v. Finklea, 155 S. W. 617; Texas Midland Ry. Co. v. Byrd, 41 Tex. Civ. App. 164, 90 S. W. 185, and authorities therein cited.

[2] There is, however, another feature in the proceedings of this case that cannot be overlooked by the appellate court. The motion for new trial is sworn to by one of the attorneys. The motion for new trial has the objectionable remarks of the court to the jury copied in full, together with the jury's request to the court. Appellant's counsel, ac-

cording to his affidavit, must have been present at the time the instruction was given by the trial court to the jury. His affidavit winds up: "Who being by me duly sworn, upon oath, deposes and says the statements made in said motion are true." He could not have made the affidavit in these words, unless he had been present and heard the instructions given by the court to the jury. It is asserted also, in appellee's brief, that counsel for appellant was present at the time and heard the instructions given, and that no complaint was raised until the presentation in court of motion for new trial on August 27th, nearly a week later. The question is: Can appellant be heard to complain at so late a day, after the instruction was given by the court to the jury? It would seem that at the time the instruction was given by the court to the jury, it was satisfactory to appellant's counsel. It must have been satisfactory, because no objection was raised to it, and no doubt, had the jury seen fit to give the boy to his mother, the appellant, no complaint would have ever been heard from appellant on the instruction given by the court to the jury. We think it is too late, in a proceeding of this case, to raise the issue on motion for new trial, and, in order to get the benefit of such error, it is necessary for objection to be raised and exception reserved thereto at the time. Had such been done, it is more than probable that the trial court would have seen his error, retraced his steps, and instructed the jury not to consider what he had said to them, but to go and consider further of their verdict, and reach a conclusion, if they could do so. True, this is speculation, but ordinarily trial judges are quick and willing to correct any error made by them during the proceedings of a trial, when their attention is called to it.

In Renn et al. v. Samos et al., 42 Tex. 110, we think the Supreme Court announced the correct doctrine as to the error complained of here. Associate Justice Moore in writing the opinion in that case, says:

"In reference to the alleged error of the court in telling the jury 'to find some character of verdict, as both parties preferred any verdict rather than a mistrial, as the case would be taken to the Supreme Court, let their verdict be what it might,' it will suffice to say that this statement, as the judge certifies, was made to the jury at the instance of appellant's counsel. If so, surely he should not complain of it. Nor does it appear from the supposed bill of exception found in the record that appellant's counsel excepted to the action of the court at the time it was had. The inference is that he did not do this until after the jury returned their verdict."

The Supreme Court affirmed that case, and perhaps there is no less vice, as measured by the law, in the statements by the trial court in that case than in the instant case. We think appellant's complaint came too late, and his assignment of error is overruled.

[3] Appellant's second assignment of error is:

"The verdict of the jury should be set aside, because the same is inconsistent with the facts in the case and with itself, in that it finds that she is entitled to a divorce under the allegations of her petition but that he is not."

Appellant's proposition under this assignment is to the effect that the verdict of the jury is in conflict with itself, which shows it to have been reached because of some improper influence, and is so inconsistent as to be insufficient upon which to base a written judgment. The reasoning, as set forth in appellant's brief, is to the effect that the jury having found appellant entitled under the pleadings and facts to a divorce and found the appellee (plaintiff below) not entitled to a divorce, under the pleadings and facts of the case, and having also found that the appellant (defendant below) was not a proper and fit person to have the care and custody of the boy, are directly in conflict with each other, the argument being that there is no rule by which the conflicting (as contended by appellant) findings of the jury, that Mrs. Hunter was entitled to a divorce on her plea of cruel treatment and Mr. Hunter denied a divorce on his plea of three years' abandonment, and Mrs. Hunter pronounced by the jury not a fit and proper person to have the care and custody of the boy and Mr. Hunter to be a proper person to have the care and custody of the boy, can be harmonized.

Appellant stresses the finding of the jury that Mrs. Hunter is not a fit and proper person to have the care and custody of the boy from the standpoint that it casts a reflection upon her, on the one hand, and then stresses the absurdity of giving her the care and custody of the girls while she is an unfit person to have the care and custody of the boy. We have no way of weighing the facts in this case, there being no statement of facts in the record, but certainly, a jury's finding that a mother is not the proper and fit person to have the care and custody, maintenance, education, etc., of a boy does not cast any reflection upon the good name of the mother of that boy. It is altogether owing to what meaning you apply to the term "fit and proper," and, as the record is presented before us, there is but one conclusion for us to come to, and that is that the trial court and the jury found that the father was better able to take care of and educate the boy. In other words, that the boy's opportunities for life would be enhanced by being provided for by the father, beyond what they would be by having to be provided for by the mother. Certainly it cannot be considered fundamental error, as the case is presented. Lohmuller v. Lohmuller, 135 S. W. 751; Moore v. Moore, 22 Tex. 237.

[4] Appellant's third assignment of error complains of the action of the trial court in admitting the testimony of a number of witnesses for plaintiff, because the same calls for the conclusions of the witnesses. As be-

fore stated, there is no statement of facts in this record, and, such being the case, there is no way for this court to determine whether the testimony was improperly admitted or not.

[5] "As fundamental error and independent proposition," appellant submits "The judgment must be rendered in accordance with the verdict, or the same will be set aside." In our consideration of appellant's assignment No. 2, we have discussed the issues which might be presented under this assignment, and we do not think, as before stated in this opinion, that, because a jury finds that the mother of the boy is not the fit and proper person to have the care and custody, education, and maintenance of him, and in the same verdict finds that she is the proper person to have the care, custody, education, and maintenance of her girls, they are necessarily inconsistent findings. Indeed, as the issues were presented to the jury by the trial court, they might be consistent findings, and that, too, without any reflections upon the mother of the boy. Certainly, there is not fundamental error presented in this issue.

There being no statement of facts in the record, and no fundamental error appearing, there is but one course for this court to pursue; that is, to affirm the case, and it is so ordered.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.